UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| DEDRA D. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-CV-069-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 16; R. 20]. The Plaintiff, Dedra Lewis, exhausted her administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision that found her no longer disabled during the Social Security Administration's (SSA) continuing disability review. The Court, having reviewed the record and the parties' motions, affirms the Commissioner's decision.

I.      **Factual and Procedural Background**

On February 26, 2013, Lewis was found disabled as of July 2012 due to her diagnosis of hairy cell leukemia. [Administrative Record ("AR") 67-70].  Her leukemia met section 13.06(A) of the Listings of Impairments, which required a finding of disability.[1] In 2016, the Social Security Administration (SSA) conducted a "continuing disability review" and determined that Lewis was no longer disabled as of October 2016. [AR 71-73]; 20 C.F.R. § 416.990. She sought

---

[1] The "Listing of Impairments" describes impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  A "claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).

reconsideration of this decision, but the disability hearing officer concluded she was not disabled. [AR 106-19] She subsequently requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 128].  A hearing was held on February 5, 2019, [AR 1366-89], and in the ALJ's April 2019 decision he found that Lewis's disability had ended on October 1, 2016 and she had not become disabled again since that date. [AR 37-50] The Appeals Council denied her request for review, [AR 7], and she filed her Complaint against the Commissioner in this Court. [R. 1]

## II.   Standard

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).  "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted).  "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This Court cannot review the case de novo,

resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine if a recipient continues to be disabled, an ALJ must follow an eight-step evaluation process. 20 C.F.R. § 404.1594(f). When a recipient challenges the termination of benefits, the central issue is whether her medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007). The eight-step analysis established by the regulations is:

1. Is the recipient engaging in substantial gainful activity (SGA)? If so, the recipient's disability will have ended.

2. If the recipient is not engaging in SGA, do her impairments meet or equal the severity of a listed impairment? If so, her disability will be continued; if not, the analysis proceeds to step three.

3. If the recipient's impairments do not meet or equal a listed impairment, has there been any medical improvement in her impairments? If so, the analysis proceeds to step four, if not, it proceeds to step five.

4. If there has been medical improvement, is it related to the recipient's ability to do work (i.e., whether there has been an increase in the residual functional capacity (RFC) based on the impairment(s) that was present at the time of the most recent favorable medical determination)? If so, the analysis proceeds to step six. If it is not related to her ability to do work, the analysis proceeds to step five.

5. If there is no medical improvement, or if the improvement is unrelated to the recipient's ability to do work, does one of the exceptions to medical improvement apply? If not, the disability has continued, if so, the disability is ended.

6. If medical improvement is related to the ability to do work or if certain exceptions apply, are the recipient's current impairments severe in combination? If the evidence shows that all current impairments in combination do not significantly limit the recipient's physical or mental abilities to do basic work activities, these impairments will not be considered severe. If not severe, she will no longer be considered disabled. If found severe, the analysis proceeds to step seven.

7. If the recipient's impairments are severe, the SSA will assess her RFC and consider whether she can do her past relevant work. If she can, she will be found no longer disabled.

8. If the recipient cannot do her past work, the SSA will consider whether the recipient can do other work given her RFC, age, education, and experience. If she can do other work, the disability will be found to have ended.

20 C.F.R. § 404.1594(f); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007).

The decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f)(1). Therefore, there is "no presumption of continuing disability." *Kennedy*, 247 F. App'x at 764 (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)). Further, unlike the standards governing initial disability determinations, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* at 765 (citing *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)).

## III.   Analysis

The ALJ followed the eight-step evaluation process as required by SSA regulations. [AR 37A-50]. At step one, the ALJ found that Lewis had not been engaged in any substantial gainful activity. [AR 40] At step two, the ALJ determined Lewis "has not had an impairment or combination of impairments which meet or medically equal the severity of" a listed impairment. [*Id.*] At step three, the ALJ found that "the medical evidence supports a finding that, by October 1, 2016, there had been a decrease in medical severity of the impairments;" specifically, "the claimant's leukemia has been in remission for over 5 years."[2] [AR 41] Therefore, the ALJ found "medical improvement" in Lewis's impairments. At step four, the medical improvement was

---

[2] The Commissioner concedes the ALJ made a factual error here, stating Lewis's leukemia had been in remission for five years. [R. 20 at 6 n. 6] However, as the Commissioner points out, the ALJ later correctly noted that Lewis's leukemia had been in remission since October 2016. [*Id.*; AR 44]. Lewis does not raise this issue and the ALJ's misstatement was harmless.

4

determined to be related to her ability to work because her impairment (leukemia) no longer met or medically equaled the listing that was met when Lewis was originally determined to be disabled. [AR 42] Based on that finding, the analysis skips to step six, where the ALJ found that Lewis still had multiple "severe" impairments. [*Id.*] He found Lewis's history of hairy cell leukemia, diagnosis of degenerative disc disease and degenerative joint disease of the knees, and generalized anxiety disorder were all severe impairments. [*Id.*] Her iron deficiency, gastritis, elbow pain, and hip pain were found to be "nonsevere" because these impairments were either controlled with medication or she received minimal treatment for them. [*Id.*] Proceeding to step seven, the ALJ assessed Lewis's RFC as the ability to perform light work, specifically:

> [P]erform light work . . . except she can: frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and must avoid frequent exposure to vibration. Mentally, she can: understand, remember, and carry out simple routine tasks and instructions; maintain concentration, persistence, and pace for simple tasks requiring little independent judgment and involving minimal variations, doing so for extended periods of two-hour segments; and occasionally interact with supervisors, coworkers, and the general public.

[AR 43]

The ALJ found she could not perform her past work but could perform three other representative occupations existing in significant numbers in the national economy. [AR 48-49] Based on this, the ALJ determined Lewis was no longer disabled as of October 2016.

In determining Lewis's RFC, the ALJ considered Lewis's entire medical history, her limitations and the restrictions they impose on her, her reported symptoms, and the opinion evidence in the record. [AR 43] He considered her history of leukemia but found she had not been treated for it since 2013, other than general monitoring, and it had been in remission since at least October 2016. [AR 41, 43] He considered the medical evidence of back pain, knee pain, and osteoarthritis, noting that she managed these limitations with medication, and she had not

referred to a specialist by her treating medical professionals. [AR 44] He considered the symptoms Lewis claimed to have and concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." [AR 45] The ALJ noted, as an example, that despite Lewis's statements of suffering from severe anxiety and panic attacks, "the treatment notes show that her anxiety has been adequately managed with medication prescribed by her primary care providers" and she "has not required emergency room or inpatient treatment for her anxiety." [AR 46] The ALJ proceeded to consider the "opinion evidence of record" and assigned varying degrees of weight to each medical opinion, according to 20 C.F.R. § 404.1527.[3] Lewis contends on appeal that the ALJ committed reversible error in assigning weight to each medical opinion. The Court will address each of Lewis's arguments in turn.

### A. Dr. Saranga and Dr. Reed

Lewis argues that the ALJ erred in giving "great weight" to the medical opinions of Dr. Saranga and Dr. Reed, both non-examining sources who found Lewis could perform the equivalent of light work. [AR 46] Dr. Saranga reviewed Lewis's records in July 2016 and filled out a "physical residual functional capacity assessment" that largely consisted of checking boxes that assessed Lewis' exertional, postural, manipulative, visual, communicative, and environmental limitations along with her alleged symptoms. [AR 1053-60] Dr. Saranga found that she could perform the equivalent of light work, such as the ability to frequently lift or carry 10 pounds; stand, walk, or sit for 6 hours in an 8-hour workday; and could frequently perform all postural activities but could only occasionally climb ladders, ropes or scaffolds. [AR 1052-60; 46] In response to the instruction to "[e]xplain how and why the evidence supports your

---

[3] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017, which includes Lewis's claim that was filed in 2016. [AR 102]; 20 C.F.R. § 404.614(a).

conclusions" concerning Lewis's exertional limitations, Dr. Saranga stated (typographical errors

included):

> showed mi [medical improvement]⁴ since hairy cell leukemia in remmssion since 1/13
> 1. back pain with radiculopathy tender.midl limtied rom [range of motion]⁵
> 2. djd [degenerative joint disease]⁶ of knees with crepitus, lt greater than rt.
> 3. hip elbow pain with from [full range of motion].
> 4. obesity with ht .66 inches, w.t 172 pounds

[AR 1055]

On the form Dr. Saranga was also instructed to "discuss" whether Lewis's alleged

symptoms were "attributable . . . to a medically determinable impairment," whether the "severity

or duration of the symptom(s)" were "disproportionate to the expected severity or expected

duration" and whether her symptom's severity and alleged effect on functioning was consistent

with the "total medical and nonmedical evidence." Dr. Saranga responded:

> alleegs limited for lift,squa,tbend,stand,reach,walk, sit, kneel, stair climbing,
> using hands
> partially consistent per mers [medical evidence of record]7

[AR 1058]

Lastly, Dr. Saranga was instructed to state whether there were any "medical source

conclusions" in Lewis's file (to which Dr. Saranga checked "Yes") and if yes, whether those

conclusions were "significantly different" from Dr. Saranga's findings (checked "No"). The

form then instructs the reviewer to explain why any conclusions contained in other "medical

---

⁴ SSA Program Operations Manual System: DI 28010.001 indicates that "MI" stands for Medical Improvement.
https://secure.ssa.gov/apps10/poms.nsf/lnx/0428010001.
⁵ "ROM" is an acronym for "range of motion." *See, e.g., Stuart v. CVS Corp.*, No. 08-14591, 2010 WL 890181, at
*3 (E.D. Mich. Mar. 10, 2010).
⁶ "DJD" is an acronym for "degenerative joint disease." *See, e.g., Harris v. Comm'r of Soc. Sec.*, 147 F. Supp. 2d
712, 720 (E.D. Mich. 2001).
⁷ SSA Program Operations Manual System: DI 22505.006 indicates that "MER" stands for Medical Evidence of
Record. https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505006.

source statements" in Lewis's file were "not supported by the evidence in file" and Dr. Saranga responded:[8]

> ce [consultative examiner][9] vendor opinion is given great weight per exam
> rfc [residual functional capacity] is considering all mers [medical evidence of record][10]
>
> [AR 1059]

About six months later, Dr. Reed also reviewed Lewis's records and filled out the same form. [AR 1093-1100] Dr. Reed replicated Dr. Saranga's findings in full. [AR 1095] Under the explanation of why the evidence supported Dr. Reed's conclusions on Lewis's exertional limitations, Dr. Reed copied Dr. Saranga's explanation verbatim, typographical errors included:

> showed mi since hairy cell leukemia in remmssion since 1/13 1. back pain with radiculopathy tender.midl limtied rom 2. djd of knees with crepitus, lt greater than rt. 3. hip elbow pain with from. 4. obesity with ht. 66 inches, w.t 172 pounds
>  [AR 1095]

 As noted above, both Dr. Saranga and Dr. Reed gave "great weight" to the opinion of Dr. Kip Beard, the "ce" (consultative examiner) who conducted a physical exam of Lewis on July 6, 2016. [AR 1038-45] Dr. Beard found Lewis had mild to moderate pain during testing of her spine, mild pain in her left knee, and minimal pain in her elbows. [AR 1041-42] Otherwise, Lewis's exam results were mostly normal: she could walk normally and without assistance, she could get on and off the examination table without assistance and had "intact sensation and normal strength in the upper and lower extremities." [AR 45; 1044] Dr. Beard's opinion was that Lewis's ability to perform repetitive bending, squatting, crawling, or medium to heavy lifting or carrying was "impaired." [AR 1014] However, the ALJ ultimately gave this postural assessment

---

[8] The form is clear that Dr. Saranga only needed to provide an explanation if they checked "Yes" on the previous question, to which Dr. Saranga had checked "No." [AR 1059]
[9] "CE" is a common SSA acronym for Consultative Examination or Examiner. *See, e.g.*, https://www.ssa.gov/disability/professionals/greenbook/ce-adult.htm
[10] SSA Program Operations Manual System: DI 22505.006 indicates that "MER" stands for Medical Evidence of Record. https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505006.

only "partial weight" because it was "vague," but ultimately agreed with Dr. Beard's assessment

on lifting. [AR 46] Relying in part on Dr. Saranga and Dr. Reed's opinions, the ALJ found Lewis

could perform "light work" which is limited to "lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds," consistent with Dr. Beard's

assessment that Lewis could not perform repetitive medium to heavy lifting. 20 C.F.R. §

404.1567(b). The ALJ also found Lewis could frequently stoop, kneel, crouch, and crawl. [AR

46]

     The ALJ chose to give the opinions from state agency physicians Dr. Saranga and Dr.

Reed "great weight" because they were "consistent with the overall evidence." [AR 46] The ALJ

explained that, for example, these opinions were consistent with the medical evidence that

showed Lewis's "degenerative disc disease and degenerative joint disease of the knees have been

treated conservatively." [AR 46]

     The Court may certainly doubt the ALJ's prudence in giving "great weight" to these

truncated, medical short-hand opinions by non-examiners, over that of Lewis's doctor who had

treated and examined Lewis personally for years.[11] Indeed, the SSA regulations explain that

"[t]he better an explanation a source provides for a medical opinion, the more weight we will

give that medical opinion. Furthermore, because non-examining sources have no examining or

treating relationship with you, the weight we will give their medical opinions will depend on the

---

[11] The Sixth Circuit has likewise expressed concern over an ALJ's decision to give more weight to a non-examiner's opinion than an examining doctor's opinion where the non-examiner's "evaluation consisted almost entirely of checked boxes and a regurgitation of some of [the examining doctor's] findings" and "provided little explanation or support for his conclusion[s]" compared to the examiner's evaluation that was "quite detailed and supported not only by his own evaluation, but also by the rest of the record." Thus, "[s]ubstantial evidence did not support the ALJ's decision to disregard [the] examining doctor's evaluation in favor of a form with little substantive information." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 464 (6th Cir. 2012). However, *Dragon* is distinguishable in that the Court finds, unlike in *Dragon*, that the ALJ's decision as a whole is supported by substantial evidence whereas *Dragon* repeatedly found each of the ALJ's conclusions were unsupported by substantial evidence.

degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. §

404.1527(c)(3). While these opinions' "supporting explanations" are minimal, the Court's role is

not to reweigh the evidence, but to determine whether the ALJ's findings are supported by

substantial evidence and if so, it "must be affirmed even if the reviewing court would decide the

matter differently" or "even if substantial evidence also supports the opposite conclusion." *Cutlip*

*v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

  The ALJ's finding that Dr. Saranga and Dr. Reed's opinions were consistent with the

medical evidence is supported by substantial evidence. Both opinions cited to the consultative

examination performed by Dr. Beard. [AR 1059; 1100] Dr. Beard had found intact sensation and

normal strength in Lewis's upper and lower extremities, and largely normal findings with respect

to her gait, elbows, hands, hips, feet, and ankles, with only mild to moderate pain in her back,

mild pain in her left knee, and minimal pain in her elbows. [AR 1038-45] As already mentioned,

the ALJ also supported his conclusion by pointing to the "conservative" nature of Lewis's

treating providers (Dr. Hardin and nurse practitioner Mr. Morris) for degenerative disc disease

and degenerative joint disease. Her treatment for degenerative disc disease largely consisted of

pain medication (citing Exhibit 10F [AR 1038-1046]) [AR 46], and the ALJ also previously

noted that Lewis's nurse practitioner (Mr. Morris) found in November 2017 only "mild

findings," including normal motor and strength; normal range of motion of the hips; normal gait;

no instability to the knees; and intact sensation (citing Exhibit l 8F/3). Further, Mr. Morris had

not ordered any x-rays or MRIs and had not referred Lewis to a specialist. [AR 44] This medical

evidence of conservative treatment is substantial evidence consistent with Dr. Saranga and Dr.

Reed's findings, and it supports the ALJ's decision.

Lewis cites *Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1071-1072 (1992) for the proposition that an ALJ cannot give "substantial weight" to "the opinion of a non-examining physician" when the physician "fails to give a reason for disagreeing with the opinion of a treating physician." [R. 16-1 at 5] According to Lewis, because Dr. Saranga and Dr. Reed did not state any reasons for why they disagreed with Dr. Hardin (her treating physician), the ALJ improperly gave their opinions great weight.

The Commissioner responds that non-examining sources are not required by any agency regulation to give reasons for disagreeing with a treating physician's opinion[12] and any suggestion otherwise in *Walker* is non-binding dicta, distinguishable, and should not be followed. [R. 20 at 10]

The Sixth Circuit's central holding in *Walker* is that when applying the "treating source" rule, an ALJ must "consider the combined effect of all of the claimant's impairments" and not consider each one separately "in a vacuum." *Id.* at 1071. For the claimant in *Walker*, "[h]ad the ALJ considered the evidence in this manner, he would have concluded that the findings of the treating physician were not contradictory, and were entitled to substantial, if not complete, deference." *Id.* In an apparent aside from this main point, in the penultimate paragraph, the Court said,

> It is worth noting that, although not emphasized in the ALJ's report, Walker's Residual Functional Capacity Assessment represented some evidence that conceivably contradicted the treating physician's opinion. The Court refuses to give dispositive

---

[12] While the Commissioner may be correct that "there is no agency *requirement*" that a non-examiner must state any reasons why he or she disagrees with a treating physician's opinion [R. 20 at 10] (emphasis added), SSA regulations do require an ALJ to "evaluate the degree to which [non-examining source's] medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources." 20 C.F.R. § 404.1527(c)(3). Further, the Sixth Circuit has recognized that when a "non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians," in that case the "non-examining physician's opinion may be accepted over that of [the] examining physician." *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001). While this is not the bright line rule that Plaintiff proposes, whether a non-examining source states his or her reasons for disagreeing with an examiner's opinion is certainly a factor the ALJ should consider in assigning weight.

11

weight to this report, however, in light of the fact that it was prepared by a physician who neither treated nor examined Walker. The only research done in the preparation of this report was a review of Walker's medical file. Further, the doctor who prepared the report did not advance his reasons for disagreeing with the opinion rendered by the treating physician, as is required on the face of the form."

*Walker*, 980 F.2d at 1071–72.

The Court agrees with the Commissioner that this language in *Walker* is dicta, as it is only incidental to the Court's holding and therefore not controlling. *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 712 (6th Cir. 2004) ("Dicta, of course, is language that is only 'incidental to the holding.'") (quoting *United States v. De John*, 368 F.3d 533, 539 (6th Cir. 2004)); *Wright v. Spaulding*, 939 F.3d 695, 697 (6th Cir. 2019) ("Those necessary decisions are the holdings that bind future courts. Not dispensable dicta that sweep more broadly than the issue at hand."); *see also Gallion v. Colvin*, No. 2014-cv-81-WOB, 2015 WL 2417969, at *9 (E.D. Ky. May 20, 2015) (describing the relevant language in *Walker* as dicta). Moreover, the holding in *Walker* is inapplicable to Lewis's case because Lewis does not contend that the ALJ failed to consider the combined effect of all of Lewis's impairments. Lewis's reliance on *Walker* is misplaced.

Lewis further argues that Dr. Saranga and Dr. Reed "did not review the complete record," presumably treatment notes that post-dated their review, and therefore the ALJ "could not rely upon" their opinions over that of Dr. Hardin's, citing to *Hollins v. Astrue*, 780 F. Supp. 2d 530, 535–36 (E.D. Ky. 2011). The district court in *Hollins* explained that for an ALJ to rely on a non-examiner's opinion, the "non-examiner should have reviewed a *complete* record which contained the report of a specialist in the claimant's particular impairment containing more detailed and comprehensive information than that available to the treating source." *Id.* (citing Social Security Ruling (SSR) 96–6p). However, the Sixth Circuit has made clear that the language from SSR 96-6p relied on by *Hollins* was merely an explanatory "example" that "does not exhaust the range of

12

'appropriate circumstances' under which a non-treating source's opinion may be entitled to greater weight than that of a treating source." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Therefore, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Id.*; *see also Handshoe v. Berryhill*, No. 7:15-CV-102-GFVT, 2017 WL 1097197, at *4 (E.D. Ky. Mar. 23, 2017) (collecting cases). Lewis's argument with respect to this point is without merit.

In any event, the ALJ reviewed the entire record, including the medical records that post-dated Dr. Saranga's and Dr. Reed's respective reviews. The record does not indicate Plaintiff's conditions worsened after their reviews. For example, the ALJ cited that Plaintiff's nurse practitioner, Mr. Morris, noted "mild findings" in November 2017 of normal motor and strength; normal range of motion of the hips; normal gait; no instability to the knees; and intact sensation. [AR 44 (citing Exhibit 18F/3)] The ALJ also referenced the findings of Mr. Morris from August 2018 and the fact that Mr. Morris had not ordered further testing or referred Plaintiff to a specialist. *Id.* The ALJ reviewed the entire record and correctly concluded that Dr. Saranga's and Dr. Reed's assessments were consistent with the overall evidence. Substantial evidence supports his decision to afford these opinions "great weight." [AR 46]

### B. Dr. Bornstein and Dr. Gonzalez

Similar to Lewis's arguments with respect to Dr. Saranga and Dr. Reed, she argues that the ALJ erred in assigning great weight to Dr. Bornstein and Dr. Gonzalez's opinions, both state agency reviewing psychologists. [R. 16-1 at 4-5] Dr. Bornstein found that Lewis has mild restriction of activities of daily living; no difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace; and no episodes of

decompensation. [AR 1071] Dr. Bornstein found Lewis was "not significantly limited" in 17 out

of 20 areas on a mental RFC assessment and only "moderately limited" in her ability to: maintain

attention and concentration for extended periods, complete a normal work-day and workweek

without interruptions from psychologically based symptoms, and respond appropriately to

changes in the work setting. [AR 1075-76] Dr. Gonzalez found that Lewis has mild restriction of

activities of daily living; moderate difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace; and no episodes of

decompensation. [AR 1089]

     Lewis asserts that Dr. Bornstein and Dr. Gonzalez produced "vague" and "lack-luster

findings," and failed to cite "special medical evidence providers to support their conclusions,"

other than a reference to "CE dated 7/21/16" which was a consultative examination performed by

state agency physician Dr. Sprague. [R. 16-1 at 8] Lewis further argues that Dr. Bornstein's

report is "internally inconsistent" because it gave great weight to Dr. Sprague's evaluation, but

Dr. Bornstein's findings ultimately differed from Dr. Sprague's. [R. 16-1 at 6-7] That is, Dr.

Sprague found Lewis had "moderate to marked" impairments in multiple areas during her mental

evaluation, whereas Dr. Bornstein found only mild limitation in Lewis's "activities of daily

living," no limitation in maintaining social functioning, and only moderate difficulty in

maintaining concentration, persistence, or pace. [AR 1071]

     While Lewis may characterize Dr. Bornstein and Dr. Gonzalez's opinions as vague or

lackluster, again, the Court's role is not to reweigh the evidence, but to determine whether the

ALJ's findings are supported by substantial evidence. *Cutlip*, 25 F.3d at 286. The ALJ

extensively outlined Dr. Bornstein's findings and chose to give great weight to her assessment

"with the exception of her finding that the claimant had no difficulties in maintaining social functioning." [AR 47] Instead, the ALJ determined that Lewis's "anxiety supports moderate impairment with social functioning," and the remainder of Dr. Bornstein's assessment was consistent with the record, such as "mild objective findings of anxious and depressed presentation, intact memory, and good judgment," citing to Exhibit 18F/1. [AR 47] The medical documentation in this exhibit shows that in November 2017 Lewis's nurse practitioner, Mr. Morris, reported Lewis having "anxiety/depression" but Lewis "denied suicidal ideations," she is "able to maintain relationships," and her mental health "does not interfere with activities of daily living." [AR 1106] Further, on physical exam, Lewis was noted to have "moderate distress," "good judgment," and was "active and alert" with "remote memory normal." [AR 1107] Similar findings were made in February 2018 [AR 1109-12] and June 2018 [AR 1113-16]. Further, the ALJ noted that Plaintiff's "overall treatment notes show that her symptoms improved with medication," [AR 45 (citing Exhibit 9F)], and that the "overall evidence shows the claimant's generalized anxiety disorder ha[s] been adequately managed with medication. She has not received formal psychological treatment." [AR 45] This evidence in the record, including Mr. Morris's findings and the lack of any formal psychological treatment, is substantial evidence that supports the ALJ's decision to give Dr. Bornstein's opinion great weight. The ALJ also gave "great weight" to Dr. Gonzalez's opinion who made findings consistent with Dr. Bornstein's opinion, except that Dr. Gonzalez assessed Lewis to have moderate difficulties in maintaining social functioning. [AR 1089] Dr. Gonzalez's opinion supports the ALJ's decision to give great weight to Dr. Bornstein's opinion "with the exception of [Dr. Bornstein's] finding that the claimant had no difficulties in maintaining social functioning." [AR 47]

On appeal, Plaintiff argues that the ALJ cannot rely on Exhibit 18F to support Dr.

Bornstein's limitations because portions of the medical documents in that exhibit apparently

contradict Dr. Bornstein's conclusions. Specifically, in February 2018, Mr. Morris (Lewis's

nurse practitioner) noted "[t]his lady is unable to work. She has social anxiety," [AR 1111] and

Mr. Morris made the same note again in June and August of 2018. [AR 1115; 1121] However,

the ALJ considered Mr. Morris's opinion that Lewis is unable to work and gave it "no weight"

because: 1) Mr. Morris, as a nurse practitioner, is not an "acceptable medical source;"[13] 2) the

determination of whether Lewis is disabled or unable to work is an issue reserved for the

Commissioner; and 3) his opinion was not consistent with "relatively mild physical examination

findings, and conservative treatment for the claimant's musculoskeletal impairments." [AR 47-

48] The ALJ is free to consider Mr. Morris's objective medical findings—that she had good

judgment, was active and alert, oriented, had normal remote memory, with some anxiety and

depression—and determine if they are consistent with or support Dr. Bornstein's conclusions. At

the same time, the ALJ can also find that Mr. Morris's statements about Lewis's ability to work

deserve no weight, because the SSA regulations clearly state that an ALJ "will not give any

special significance to the source of an opinion on issues reserved to the Commissioner" such as

a "statement by a medical source that you are 'disabled' or 'unable to work'")." 20 C.F.R. §

404.1527(d)*; Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008).

Similar to Dr. Saranga and Dr. Reed's opinion, this Court might agree that Dr. Bornstein

and Dr. Gonzalez could have explained more clearly and in full their findings and conclusions.

---

[13] Mr. Morris is an advanced practice registered nurse (APRN). Under the regulations applicable at the time Lewis filed her claim, APRNs were not considered acceptable medical sources. 20 C.F.R. § 404.1502(a)(7). However, opinions from sources who are not "acceptable medical sources" are still assigned weight, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

But the ALJ still nevertheless determined that these doctors' opinions were consistent with the medical evidence in the record, and the Court finds that the ALJ's decision is supported by substantial evidence in the record.

### C. Dr. Sprague

Dr. Sprague evaluated Plaintiff in July 2016 and was the only state agency physician to examine Lewis for mental impairments. Lewis argues that the ALJ erred in giving only "partial weight" to Dr. Sprague's opinion that found Lewis was "moderately to markedly" impaired in her ability to: sustain concentration and attention, do complex task functions in the work arena, handle the stressors of everyday living, maintain regular attendance and be punctual, and to be able to accept criticism from supervisors and deal with rapid change. [AR 46-47] Instead, the ALJ found Dr. Sprague's assessment was generally "not supported by the claimant's limited mental health treatment through her primary care providers, and the relatively mild objective findings on mental status examinations throughout the record." [AR 47] For similar reasons explained with respect to Dr. Bornstein's opinion, the ALJ's finding that Dr. Sprague's assessment was not consistent with the record is supported by substantial evidence. The ALJ's decision to give Dr. Sprague's opinion only partial weight is supported by substantial evidence, because the opinion was inconsistent with the evidence of Plaintiff's conservative and generally routine mental health treatment history, and mild objective findings on mental examinations. [AR 47] The ALJ explained that Lewis has never required any emergency room or inpatient treatment for her mental health, she has never received any "formal psychological treatment" at all, and her anxiety has been "adequately managed with medication prescribed by her primary care providers." [AR 44-46]

The ALJ did not solely credit only the medical opinions that undermined Lewis's claim of disability and wholly reject any opinion that supported it. Rather, the ALJ carefully considered each finding of every medical opinion, considered whether it was consistent or inconsistent with the evidence and other opinions in the record, and made an informed finding based on this overall assessment. For example, where Dr. Bornstein's assessment weighed heavily against Lewis's claim of disability and the ALJ gave most of Dr. Bornstein's opinion great weight but modified the weight to account for the evidence of Lewis's anxiety and the effect it has on her social functioning. [AR 47] Further, the ALJ assessed a more restrictive mental RFC than Dr. Bornstein's opinion would suggest, limiting Plaintiff to only simple tasks, requiring little independent judgment or variation, and only occasional interaction with others. [AR 43]

Plaintiff contends that under *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983) the SSA "cannot disregard opinions of a consulting physician which are favorable to the claimant." [R. 16-1 at 7-8] *Lashley* does not support Plaintiff's argument. The Sixth Circuit in *Lashley* held that the ALJ erred by depriving the unrepresented claimant of a "full and fair hearing" by only engaging in "superficial" questioning and failing to fully develop the record. *Id.* at 1051. Further, the Court also found that the ALJ's decision was not supported by substantial evidence, in part because the ALJ did not properly weigh the opinion evidence. *Id.* at 1054. However, *Lashley* does not require an ALJ to fully accept a physician's opinion that is favorable to the claimant simply because that physician was hired as a consultant by the SSA.

### D. Dr. Hardin

Last, Lewis argues that the ALJ "failed to give adequate reasons for discounting the treating physician's limitations." [R. 16-1 at 10] Dr. Hardin was Lewis's "treating physician" or "treating source." [AR 45]

18

Agency regulations mandate that an ALJ sufficiently consider the medical opinions from a claimant's treating physician and generally require an ALJ to give a treating physician's medical opinion "more weight." 20 C.F.R. § 404.1527(c)(2)). If the treating physician's opinion "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotation marks omitted) (*citing Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, where contradicting substantial evidence exists, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004), provided the ALJ articulates "good reasons" for doing so. *Wilson*, 378 F.3d at 547; 20 C.F.R. § 404.1527(c)(2). These "good reasons" must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5).

In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the . . . relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency . . . with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Gayheart,* 710 F.3d at 376 (quoting *Wilson*, 378

F.3d at 544). But the ALJ need not expressly address every factor: "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' — not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 624, 630 (6th Cir. 2016) ("[T]he ALJ gave good reasons for discounting [the treating physician's] opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering *some* of the listed factors . . .") (emphasis added). Though an ALJ need not expressly consider every factor, the ALJ may not summarily reject a treating physician's opinion without identifying and explaining the evidence relied on in rejecting it. *See Hargett v. Comm'r Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) ("[A]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion."). "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,'" the Sixth Circuit has "held that an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.2007) (internal quotations omitted)).

Lewis argues that the ALJ failed to provide "good reasons" for assigning little weight to Dr. Hardin's opinion, and therefore the ALJ's decision is not supported by substantial evidence. [R. 16-1 at 11] Contrary to Lewis's assertion, the ALJ provided good reasons, sufficiently

specific, to make clear not only the weight given to Dr. Hardin's opinion but also the reasons for

that weight. [AR 45-46] First, the ALJ recognized the treatment relationship, describing Dr.

Hardin as Plaintiff's "[p]rimary care physician." [AR 44] Nevertheless, the ALJ gave "no weight

to Dr. Hardin's work excuse because a determination as to whether the claimant is disabled or

unable to work is an issue reserved to the Commissioner." [AR 46] As noted previously, this is

consistent with SSA regulations. 20 C.F.R. § 404.1527(d) (an ALJ "will not give any special

significance to the source of an opinion on issues reserved to the Commissioner" such as a

"statement by a medical source that you are 'disabled' or 'unable to work'").

Second, the ALJ noted that "[i]n numerous treatment notes, Dr. Hardin also advised the

claimant not to perform heavy and repetitive lifting (Exhibit 9F)." [AR 46] The ALJ gave "little

weight" to such assessments because these opinions were "vague and do[] not provide functional

limitations." [AR 46] Lewis argues that Dr. Hardin's opinions are not vague at all and clearly

provide "functional limitations." [R. 16 at 11] Lewis points to treatment notes from July 21,

2017,[14] where Dr. Hardin stated that Lewis's activities should be limited to: no heavy lifting,

avoid repetitive lifting, avoid awkward positions, no pulling or pushing of heavy objects, when

lifting use proper techniques, "[w]alking 150 feet [at] a time," maximum lifting of 20 pounds,

frequent lifting of 10 pounds, "total standing 1 hours per 8-hour day," "continuous sitting 1

hour," and "total sitting 2 hours per 8 hour day." [R. 16 at 11; AR 1018] But other treatment notes

from Dr. Hardin (the ones the ALJ was referring to) were far less specific. For instance, on

November 11, 2016, Dr. Hardin opined "no heavy or repetitive lifting" without specific

functional limitations [AR 1011], and likewise on February 27, 2017 advised "No Heavy or

Repetitive or Awkward Lifting-Positions" without more. [AR 1014] Dr. Hardin's opinions of

---

[14] The treatment notes indicate these findings were made during a "Routine Office Visit on 07/21/2017" and electronically signed by Dr. Hardin on 09/04/2017. [AR 1017-18]

what Lewis could physically do, to some extent, varied in degree over time. In November 2016 he stated Lewis should only stand for a total of 2 hours per 8-hour day [1009], and in July 2017 he reduced this to 1 hour per day. [AR 1018] The ALJ simply discounted as too vague the general limitations contained in Dr. Hardin's treatment notes that failed to provide specific functional limitations.

What is more, the ALJ did not ignore the other, more specific functional limitations opined to by Dr. Hardin. In fact, he outlined the more specific limitations by Dr. Hardin in his decision and then provided good reasons for discounting them. [AR 46] Lewis argues the ALJ erred in stating that he "gives little weight [Dr. Hardin's] assessment that claimant is limited to sedentary work because it is not supported by the evidence." [AR 46] Plaintiff argues the ALJ misinterpreted this opinion because the opinion was actually that Lewis *could not even perform sedentary work*. [R. 16 at 12] It is unclear what medical records the ALJ relied on for finding Dr. Hardin had limited Lewis to sedentary work, because the ALJ does not cite to any. [AR 46] The only place in Dr. Hardin's records that Lewis points to (and the only records the Court can find) indicates that Dr. Hardin stated, "Plan: Avoid heat. No manual or sedentary work." [AR 1016] Nevertheless, the ALJ discounted this opinion as "not supported by the evidence." [AR 46] And in fact, the ALJ found Lewis capable of performing light work (that is, work even more strenuous than sedentary work), so the ALJ's alleged misstatement was harmless in any event. The ALJ still concluded that even a limitation to sedentary work was not supported by the evidence. [AR 46]

The ALJ then went on to reject these functional limitations by considering some of the listed factors in 20 C.F.R. § 404.1527(c)(2). He found Dr. Hardin's opinions were "not supported by the evidence," citing to the report by consultative examiner Dr. Beard. [AR 46] This finding

was prefaced by a lengthy discussion of Dr. Beard's exam which found Lewis had mild to moderate pain in her spine, mild pain in her left knee, and minimal pain in her elbows, but otherwise, her exam results were generally normal. [AR 1041-42] The ALJ noted that Dr. Beard found Lewis could walk normally and without assistance and had "intact sensation and normal strength in the upper and lower extremities." [AR 45]

Rather than summarily discounting Dr. Hardin's opinion, the ALJ provided good reasons, by "identifying and explaining how the substantial evidence [was] . . . inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552. Specifically, the ALJ assessed the "supportability of [Dr. Hardin's] opinion" and its "consistency . . . with the record as a whole," *Wilson*, 378 F.3d at 544, explaining that "examinations have shown intact sensations and normal strength in the upper and lower extremities." [AR 46] He further explained that "[Lewis's] degenerative disc disease has been conservatively treated with pain medication." *Id.* The ALJ previously outlined in detail the treatment notes of Dr. Hardin and Mr. Morris, observing Dr. Hardin "managed her back pain with medication," and that Mr. Morris noted "mild findings" in November 2017, "has not ordered any x-rays or MRIs . . . [and] has not referred the claimant to a specialist." [AR 44] Immediately after assigning the weight given to Dr. Hardin's opinions, the ALJ discussed the assessments of Drs. Saranga and Reed, state agency consultative physicians, which he afforded "great weight," explaining they were "consistent with the overall evidence" because, for example, "the claimant's degenerative disc disease and degenerative joint disease of the knees have been treated conservatively." [AR 46]

To be sure, the ALJ could have mapped out his findings more thoroughly, but an "exhaustive factor-by-factor analysis" is not required. *Francis*, 414 F. App'x at 804. The ALJ gave specific examples of what Dr. Beard found on examination (that Lewis had intact sensation

and normal strength in the upper and lower extremities) and of the inconsistency of Dr. Hardin's

opinions with the treatment notes (that she had been conservatively treated with pain medicine,

nor had been ordered to undergo additional testing, and was never referred to a specialist). The

ALJ did not need to repeat *all* the medical evidence that undercut the weight of Dr. Hardin's

opinion because the ALJ had listed that evidence elsewhere in his opinion. *Crum v. Comm'r of

Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (holding ALJ stated good reasons where ALJ

listed the treatment records that were inconsistent with the treating physician's opinion

"elsewhere in her opinion.").

Lewis argues that Dr. Hardin's opinion is fully supported by his records. [R. 16-1 at 12-

14] However, Lewis relies almost entirely on medical records pre-dating October 2016, a time

period that the Commissioner does not contend Lewis was not disabled. Rather, the ALJ's

decision determined that since October 1, 2016, Lewis was no longer disabled. Dr. Hardin's

medical records from 2012 through 2015 are less relevant in determining Lewis's disability

status in October 2016.

The Court finds that the ALJ satisfied the reason-giving requirement for discounting Dr.

Hardin's opinions by citing the opinion's inconsistency with other evidence in the record (the

exam findings of Dr. Beard), pointing to the conservative treatment provided to Lewis as

outlined in the treatment records, and noting the assessments of other physicians such as Dr.

Saranga and Dr. Reed, which the ALJ found to be consistent with the overall evidence in the

record. In other words, the ALJ sufficiently identified the discrepancies in the record that

undermined Dr. Hardin's opinions and explained why Dr. Hardin's conclusions got "the short

end of the stick." *Friend*, 375 F. App'x at 552. "Unlike the cases where [the Sixth Circuit has]

held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here

24

the ALJ did not merely cast aside the treating physician's opinion without explanation." *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008). Instead, the ALJ's stated reasons for giving Dr. Hardin's opinion little weight are procedurally sufficient and supported by substantial evidence in the record. Based on the Court's review of the ALJ's decision, the Court finds that it is supported by substantial evidence and was made in accordance with proper legal standards. *Rabbers*, 582 F.3d at 651. The Court will grant the Commissioner's Motion for Summary Judgment.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1.      The Plaintiff's Motion for Summary Judgment [**R. 16**] is **DENIED.**

2.      The Commissioner's Motion for Summary Judgment [**R. 20**] is **GRANTED.**

3.      The decision of the Commissioner is **AFFIRMED**.

4.      A judgment will be entered contemporaneously with this Order.

This the 12th day of January, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY